# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Linda L. Dickerson, | ) | C/A No. 5:12-33-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Carolyn W. Colvin,[1] Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Also before the court is Plaintiff's Motion to Consider Additional Evidence, ECF No. 33. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issue before the court is whether the Commissioner's decision is supported by substantial evidence. For the reasons that follow, the undersigned recommends that Plaintiff's Motion, ECF No. 33, be denied, and the Commissioner's decision be reversed and remanded for further administrative action.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

I.    Relevant Background

A.    Procedural History

Plaintiff filed her applications for DIB and SSI on March 20, 2009, alleging she was disabled beginning June 9, 2002. Tr. 147-53. Subsequently, through her counsel, Plaintiff amended her alleged onset-of-disability date to March 1, 2008. Tr. 31-32. Her applications were denied initially and upon reconsideration. Tr. 65-68.  An Administrative Law Judge ("ALJ") held a hearing on July 22, 2010, and issued an unfavorable decision on August 27, 2010. Tr. 27-62 (hr'g tr.); Tr.9-22 (decision). Plaintiff filed a request for review by the Appeals Council. Tr. 7. In considering Plaintiff's request for review, the Appeals Council received additional evidence, which it made part of the record. Tr. 4-5. On November 1, 2011, the Appeals Council denied Plaintiff's request for review, Tr. 1-3, making the ALJ's decision the final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on January 4, 2012. ECF No. 1.

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 39-years-old as of March 31, 2009, which was her date last insured.[2] She was 41-years-old as of the July 2010 administrative hearing. Tr. 147. She has past relevant work ("PRW") as a home attendant and a housekeeper, Tr. 181, and she last worked June 1, 2004, Tr. 180.  Plaintiff completed the tenth grade. Tr. 184.

Plaintiff previously applied for DIB and SSI in June 2003, alleging disability beginning June 9, 2002. Those applications were denied by an ALJ on December 1, 2004, and after the Appeals Council denied her request for review, Plaintiff did not further appeal. Tr. 70. Plaintiff

---

[2] To qualify for DIB, a claimant must be found to have been disabled on or before her last date insured. *See* 20 C.F.R. §§ 404.131, 416.131.

also previously protectively filed applications for DIB and SSI in March 2005, alleging disability beginning June 9, 2002. Those claims were denied by an ALJ on November 21, 2007, and Plaintiff did not further appeal. Tr. 70-86.

Both Plaintiff and Defendant cite to numerous medical records that pre-date Plaintiff's March 1, 2008 alleged onset-of-disability date, *see* Pl.'s Mem. 2-6, Def.'s Mem. 3-5, and the court does not discuss those records in detail here. In summary, these records indicate that, beginning in 2002, Plaintiff experienced syncopal episodes, headaches, anxiety, depression, and pain in her back and legs. *See, e.g.*, Tr. 489-95. Plaintiff was seen regularly by her primary care physician, Brian Wright, M.D. of Beach Internal Medicine, who prescribed medications, ordered tests, and referred Plaintiff to specialists. *See, e.g.*, Tr. 486-88.

An August 2003 MRI indicated mild disc herniation and minimal bulging, and Dr. Wright opined Plaintiff should not do any lifting because of the risk of herniating the bulging disks. Tr. 230-33, 468-69.  Plaintiff continued to see Dr. Wright between September 2003 and March 2006 concerning back pain. She was treated with several modalities, and her symptoms generally responded to treatment. Tr. 375, 379, 381, 383, 385, 448, 450, 452, 454, 460, 464. MRIs of Plaintiff's back taken in March 2005 and June 2007 showed no disc herniation or abnormalities. Tr. 235-36, 279.

Plaintiff reported several syncopal episodes in 2002. *See* Tr. 491-95. In May 2002, Dr. Wright noted Plaintiff's syncope had resolved. Tr. 486-87. Plaintiff reported several "near-syncope" events in 2007, although care providers found no abnormalities and suspected medication side-effects. *See* Tr. 291, 391, 379, 387, 397, 404-09, 427-30, 601-02.

Between late 2006 and early 2008, Dr. Wright made no findings regarding anxiety, depression, or headaches. *See* Tr. 345-52, 357-72.

2.      Medical History After Plaintiff's March 1, 2008 Alleged Onset-of –
         Disability Date[3]

Plaintiff went to the Emergency Room ("ER") of Grand Strand Regional Medical Center

("Grand Strand") on March 9, 2008, for treatment of an ankle sprain that occurred when she

passed out two days earlier. Tr. 244-45. The ER attending physician suspected vasovagal or

hyperventilation syncope, but saw no evidence of life-threatening cardiac or neurologic

etiologies for syncope. Tr. 244.

Plaintiff saw Dr. Wright on April 17, 2008 with complaints of a headache lasting two

days. Tr. 324-25. Dr. Wright attributed her headache to cervical muscle strain/spasm and gave

her samples of Celebrex. *Id.*

Plaintiff returned to Grand Strand ER on April 26, 2008 with a left-sided headache with

associated phonophobia and photophobia. Tr. 246. She was initially treated with Reglan and

Benadryl, which decreased her pain from a ten to a seven on a ten-point pain scale. After a

negative CAT scan, she was given Toradol and morphine. Discharge notes from April 29, 2008

reflect that Plaintiff was stabilized over two days and treated with prednisone. It was thought that

her hypercoagulable state, caused by her blood pressure medication, contributed to a tendency

for vasculitic headaches. Tr. 251.

Plaintiff returned to the ER on May 6, 2008 with headache. Tr. 253. Neurological

examination was normal. *Id.* She received Morphine and Phenergan and was released. Tr. 253-

54.  It was thought that she was having cluster headaches. Tr. 254.

When she returned to Dr. Wright on May 21, 2008, Plaintiff reported her headaches had

increased in frequency and duration and that she had been to the ER for them. Tr. 322. Plaintiff

---

[3] The court's medical summary focuses on impairments Plaintiff discusses in her argument.

told Dr. Wright medications were ineffective, and he recommended that she revisit a neurologist. *Id.*

On June 4, 2008, Plaintiff reported to Dr. Wright's office with headache, dizziness, and chest pain. Tr. 320. She was sent to the ER at Grand Strand, *id.*, where she was seen for a severe headache, Tr. 255-56. Notes reflect that she had previously been treated with Midrin, which helped her headache pain, but that she had run out of it. Tr. 255. She told staff that she had tried to make an appointment with a neurologist, but no one would see her because she was a Medicaid patient. She was treated with Morphine and Phenergan, which provided relief. However, her pain returned while still at the ER. She was then treated with Dilaudid and a dose of hydralazine. Tr. 256. She was discharged in stable condition with prescriptions for Midrin and Medrol dose pack. *Id.*

On July 17, 2008, Plaintiff saw Dr. Wright with complaints of sinus congestion, increased fatigue, and headache. Tr. 318. Dr. Wright noted that a recent neurology work-up of Plaintiff had been negative and thought that Plaintiff's headaches might have been related to allergies. Tr. 318. He gave her samples of Xyzal. *Id.* Notes from the July 17, 2008 visit indicated Plaintiff's back pain was stable and that she should continue pain management. *Id.*

On August 14, 2008, Dr. Wright noted that Plaintiff's headaches had not responded to allergy therapy, and he advised her to consult with an allergist. Tr. 316. He noted no change in the diagnosis of Plaintiff's back pain and instructed her to continue pain management. Tr. 315-16. He further noted Plaintiff's neuropathic pain was stable with treatment. *Id.*

Plaintiff presented to the Grand Strand ER on October 7, 2008 with ankle pain. Tr. 257. She had seen her primary physician and was at the hospital for an x-ray prior to reporting to the ER due to pain. Clinical impression was left ankle strain. She was to be treated with elevation,

anti-inflammatories, crutches and a prescription for Darvocet for severe pain. Tr. 258. Her x-rays were negative. Tr. 271.

On December 8, 2008, Plaintiff returned to the Grand Strand ER with complaints of diffuse weakness and left-sided lower chest pain. Tr. 259. It was noted that she no longer had insurance and had not taken many of her medications in a month. *Id.* IV fluids were administered, and Plaintiff stated that she continued to feel somewhat weak. Tr. 259-60. Tests, including a head CT, chest CT, blood work, and an EKG, revealed no abnormalities, and Plaintiff was discharged with instruction to follow up with Dr. Wright. *Id.*

Plaintiff followed up with Dr. Wright on December 11, 2008. Tr. 332. He noted that Plaintiff no longer had insurance and was unable to get her prescriptions filled. Tr. 332. He opined that the lack of medication led to elevated blood pressure and her symptoms of weakness and numbness. Dr. Wright further noted that Plaintiff was experiencing possible withdrawal symptoms as she was no longer taking her pain medication. *Id.* He restarted her on some medications. *Id.*

In January 2009, Plaintiff reported back and neck pain. Dr. Wright assessed muscle strain and prescribed muscle relaxants, warm compresses, and exercises. Tr. 330. Dr. Wright noted Plaintiff's lumbar spine was stable and her pain management was adequate. Tr. 330-31.

On March 19, 2009, Plaintiff reported increased back symptoms; Dr. Wright administered trigger point injections. Tr. 328-29. His notes from that visit indicated Plaintiff's headache issues were stable. Tr. 328.

Plaintiff was admitted to the Grand Strand ER following two syncopal episodes on May 19, 2009. Tr. 529-36. She reported that the episodes were preceded by light-headedness, nausea, and pleuritic central chest pain. Imaging and urinalysis were negative, and Plaintiff was

discharged in good condition. Tr. 532. She was instructed to follow up with Dr. Wright the following day. *Id.*

Dr. Wright referred Plaintiff to the Coastal Samaritan Counseling Center. During an intake interview on May 11, 2009, Plaintiff indicated she was depressed because of medical problems. Tr. 572-75. She noted she was taking Remeron for depression. Tr. 575. Her first appointment was with therapist Jim Remington, Ph.D. on May 13, 2009. Tr. 597-600. During an intake interview, Dr. Remington noted that Plaintiff was oriented, well-groomed and cooperative, with a constricted affect and a depressed mood. Tr. 597. Dr. Remington noted Plaintiff was cooperative, with calm motor activity, intact thought processes, appropriate thought content, average intelligence and insight, and good rapport with her therapist *Id.* Dr. Remington diagnosed Plaintiff with mood disorder due to general medical condition. *Id.* Plaintiff indicated her problem was "depression." *Id.*

Plaintiff attended counseling sessions with Dr. Remington in May, June, and July 2009. Tr. 593-596. On August 24, 2009, she began seeing Pamela Kelaher, LPCI, also with Coastal Samaritan Counseling Center. Tr. 592. Ms. Kelaher noted that Plaintiff struggled with anxiety and depression. Tr. 588. Plaintiff saw Ms. Kelaher until September 8, 2009. Tr. 587-91.

In June and September 2009, state agency psychologists Lisa Varner and Michael Neboschick, Ph.D., reviewed the record and opined that Plaintiff had not shown severe mental impairments. Tr. 501-13 (Varner), 542-54 (Neboschick).

Plaintiff saw Dr. Wright on June 8, 2009, with complaints of low-back pain. Tr. 527-29. Dr. Wright prescribed steroid medication and muscle relaxants in addition to her on-going pain management and noted that her peripheral neuropathy was "at baseline." Tr. 527-28.  He also

noted her headaches were "stable" and continued her on current treatment for them. *Id.* Plaintiff complained of increased nausea, which he indicated was "likely GERD." *Id.*

In mid-June 2009, Plaintiff presented to Ashbury Williams, M.D., for a physical examination in relation to her claims for Social Security disability benefits. *See* Tr. 497-500. Her medications at the time included morphine, Valium, steroid medication, and anti-depressant medication. On examination, she was in no acute distress, with good range of motion in all joints and in her back. Dr. Williams' impressions included chronic back pain of unknown etiology, abdominal mass in upper-mid abdomen, hypertensive cardiovascular disease, previous pulmonary embolism, chronic depression and previous history of deep vein thrombosis. Tr. 499. Dr. Williams noted Plaintiff's hypertension was controlled by medications. *Id.* Dr. Williams indicated there was "no swelling, tenderness, heat, deformity, or limitation of motion of the back or joints." Tr. 500. Plaintiff could stand, walk, bend, stoop, and get on and off the examination table. *Id.* Dr. Williams noted generalized weakness (finding 4/5 strength in both hands, arms, and legs), and opined that Plaintiff should only use her hands for very light manual dexterous purposes, but stated, "[n]o gross evidence for sensory or motor deficit." *Id.* X-rays of her back were normal. Tr. 499.

State agency physician Mary Lang, M.D., subsequently reviewed the record and completed a Physical RFC Assessment Form, opining Plaintiff could perform work at the light level of exertion. Tr. 515-22. Dr. Lang found that Dr. Williams' opinion about limited hand use was not supported by his own examination findings, and that there was no evidence of cervical disc disease or an intrinsic hand impairment. Tr. 521.

In a Physical RFC Assessment form completed September 16, 2009, nonexamining physician Angela Saito, M.D. opined Plaintiff was capable of work at the light-exertion level. Tr.

564-71. Dr. Saito opined Plaintiff had no postural, manipulative, visual, or communicative limitations; she also found Plaintiff's only environmental limitation was to avoid even moderate exposure to hazards such as "machinery, heights, etc.". Tr. 566-68.

In August 2009, Dr. Wright opined that Plaintiff's back impairment and peripheral neuropathy were "at baseline" and her headaches and anxiety disorder were both "stable." Dr. Wright indicated Plaintiff should remain on her current treatment. Tr. 525-26.

Plaintiff presented to the Conway Medical Center on September 15, 2009 with a severe headache. Tr. 604. Exam showed sinus congestion and pain, and blurry vision. Examination showed normal range of motion in Plaintiff's neck, normal deep tendon reflexes, and an intact gait. Tr. 605. Discharge diagnosis was benign positional vertigo and hypertension. Tr. 606. She was sent home with a prescription for Compazine and directed to follow up with her primary care physician. Tr. 606; *see id. at* 556 563.

On December 29, 2009, Plaintiff saw Dr. Wright with complaints of increased back spasms. Tr. 633. On examination, he found Plaintiff's lumbar spine and peripheral neuropathy were stable and indicated Plaintiff should continue to take Valium, use warm compresses, and perform stretching exercises for the back spasms. *Id.* Dr. Wright noted Plaintiff's headaches were stable, and continued her current course of treatment. *Id.*

C.      Administrative Hearing Testimony

Plaintiff and her counsel appeared at a hearing before an ALJ on July 22, 2010. Also present was Mark A. Stebnicki, Ph.D., a vocational expert ("VE") testifying at the request of the ALJ. Through her attorney, Plaintiff amended her onset date to March 1, 2008. Tr. 31-32. The ALJ noted that the impairments at issue were degenerative disc disease, neuropathic pain, hypertension, syncopal episodes, pulmonary embolism, anxiety, and depression. Tr. 34. Plaintiff

testified that she had a tenth grade education; she had not completed a GED. Tr. 55. Plaintiff said that she received injections of Lovenox twice a day to treat her pulmonary embolism. Tr. 35. She explained that she suffered from severe headaches for which she had sought emergency treatment multiple times. Tr. 37. Plaintiff stated that her left leg sometimes gave out without notice, that she suffered from severe back pain and episodes of syncope, and that she was on heavy medication. Tr. 39-40. She said she experienced the back pain every day. Tr. 41. Plaintiff indicated she was not supposed to drive because of all the medication she took, and she said she could not function when she took them all. Tr. 40. Plaintiff indicated that one of the medications she took was morphine and that, when she took it, she sometimes would lie down to sleep about six or seven hours. Tr. 42. Plaintiff testified that she experienced episodes of syncope at least once per month, sometimes twice per month. Tr. 43. She said the cause of the syncope was undetermined and that it kept her from driving much. *Id.* Plaintiff testified that she experienced chest pain, asthma and severe allergy symptoms, which were treated with Advair, Claritin, and an Albuterol pump. Tr. 42.

Plaintiff estimated she could sit for about 15 to 20 minutes at a time. Tr. 44. She said she could not stand in a long line at the grocery store because it would put too much pressure on her back and leg. *Id.* She said she could walk fine, but that she did have pain radiate down her leg. Tr. 45.

In response to the ALJ's question regarding whether she received regular medical treatment, Plaintiff indicated that she did. Tr. 45. She elaborated that she had been seeing Dr. Brian Wright and had just started seeing a new provider at Healthcare Partners. *Id.* She also noted she sometimes sought treatment at Conway Hospital or Grand Strand. *Id.* She noted she did not have the ability to pay medical bills. *Id.*

Plaintiff had been taking Remeron for several years to treat her anxiety and depression. Tr. 45-46. She had been receiving counseling services at Coastal Samaritan Counseling Center, but no longer went because she could not afford to pay. Her previous counselor at that facility had treated her despite the fact that he knew she could not pay for visits, but the current management would not allow her to be seen. Tr. 46.

In response to questions from the ALJ regarding why she could not work, Plaintiff said it was because she could not lift anything and was "under heavy sedation practically half of the day and [could] pass out without notice." Tr. 48. She also said the medication she took made her "practically like a zombie." *Id.* The ALJ inquired how many times she had passed out and received medical attention for passing out in the past six months. Tr. 49. Plaintiff said she probably sought medical attention for passing out once in the past six months because the other times she had not gone to the hospital. Tr. 49.

Plaintiff said that her father and daughter prepared meals for her and took her to appointments. Tr. 46-47. She said her son had been living with her until a week before the hearing. Tr. 50. She said her son did household chores such as vacuuming and mopping. Tr. 47. She said her son did the laundry sometimes, and she did it sometimes. *Id.* She said her son often fixed meals for her. Tr. 50. She said her brother maintained her yard. Tr. 51.

Plaintiff said she had driven herself to the hearing and that she sometimes drove herself to appointments when necessary. Tr. 52. She estimated that she drove on average twice per week. Tr. 52-53. She said her driving was only for short trips and she had not been on out-of-state trips since March 2008. Tr. 52-53. She said she attended church two or three times per month, when she felt up to going. Tr. 53. She said she occasionally did her own grocery

shopping.  Tr. 55. She said she did not watch much television and that she read, but sometimes had difficulty following or retaining what she was reading. Tr. 55-56.

VE Stebnicki described Plaintiff's PRW as a housekeeper as light, unskilled work and her work as a home attendant as medium and semi-skilled. Tr. 58. The ALJ's first hypothetical described a worker of Plaintiff's age, education and work experience who was limited to sedentary work with moderate exposure to workplace hazards and was limited to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions with few workplace changes. *Id.* The VE responded that such an individual would be incapable of performing Plaintiff's PRW, but described other "sedentary" jobs that such a person could perform. Tr. 58-59. The VE agreed with the ALJ that an individual who, because of "a combination of pain and medication," was unable to maintain sufficient concentration to perform her job duties consistently for a 40-hour work-week, would not be able to maintain regular employment. Tr. 59-60.

Plaintiff's counsel informed the ALJ she would not be submitting additional evidence. Tr. 33-34. When asked whether Plaintiff was relying on a medical source opinion about Plaintiff's abilities, Plaintiff's counsel indicated she was not. Tr. 38.

D.      The ALJ's Findings

In his August 27, 2010 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since March 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: anxiety, depression, and degenerative disc disease with neuropathic pain (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work[4] as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant's capacity is further limited to work that allows avoiding moderate exposure to work place hazards; performing simple, routine, repetitive tasks, free of fast paced production requirements and involving only simple, work-related decisions; with few, if any work place changes.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on August 27, 1969 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 12-21.

---

[4] Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. (Footnote 1 in ALJ's decision).

E.     Evidence Subsequent to the ALJ's Decision

1.  Evidence Before the Appeals Council

On September 21, 2011, Dr. Elliott Bettman examined Plaintiff and completed a form titled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." Tr. 644-46. Dr. Bettman indicated that Plaintiff could lift no more than ten pounds, and that she could sit, stand, and/or walk for fewer than two hours. Tr. 644-46. Dr. Bettman opined that Plaintiff could sit for ten minutes, stand for five, and needed to walk around every 20 minutes. He also stated that Plaintiff would need to lie down at unpredictable intervals during a work shift. Dr. Bettman's reports includes several notations regarding what medical findings support the limitations he found Plaintiff had; however, the writing is illegible. The undersigned can only determine that his written comments include "MRI." *See* Tr. 644-46. Dr. Bettman's report was submitted to the Appeals Council on September 28, 2011. Tr. 643. The Appeals Council made Dr. Bettman's report part of the administrative record. Tr. 1. However, it denied Plaintiff's request for further review, noting the additional evidence did not provide a basis for changing the ALJ's decision. Tr. 1-2.

2.  Evidence Provided to District Court Only: Plaintiff's Motion to Consider Additional Evidence

In Plaintiff's September 21, 2012 Reply brief, ECF No. 25, she argues, *inter alia*, that the court should permit her to submit additional records from Dr. Bettman for the court's consideration. Pl.'s Reply 4-5, ECF No. 25. On October 28, 2012, Plaintiff's counsel refiled the same Reply brief and attached several "medical records." *See* ECF Nos. 28, 28-1, 28-2. Submitting such records as an attachment to a brief does not make them part of the administrative record in this matter. At the court's request, *see* ECF No. 30, Plaintiff filed a

14

Motion to Consider Additional Evidence, ECF No. 33, on May 1, 2013. The Commissioner filed

a response to the Motion, ECF No. 35, and Plaintiff filed a Reply, ECF No. 37.

II.    Discussion

    A.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

considerations and noting "need for efficiency" in considering disability claims).  An examiner

must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[5] (4) whether such impairment prevents claimant from performing PRW; and (5)

---

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or
"Listed impairments") the Agency considers disabling without the need to assess whether there
are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20
C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R.
§§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of
any of the Listed impairments for at least one year, he will be found disabled without further
assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these
Listings, the claimant must establish that his impairments match several specific criteria or be "at
least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan*

whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b); 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

---

*v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id., Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Plaintiff raises five issues on appeal.  First, Plaintiff contends that the ALJ erred by not obtaining additional medical evidence. Further, she argues the Appeals Council erred by

failing to consider additional information submitted by Plaintiff. Plaintiff claims the ALJ erred in finding her history of headaches and syncope were not severe impairments. Plaintiff also claims the ALJ's RFC analysis was incomplete and his credibility assessment was in error.

### 1. Consideration of Evidence Before the Appeals Council

The court first considers Plaintiff's argument that the Appeals Council erred by failing to consider the additional evidence it received—the opinion from Dr. Bettman. *See* Tr. 643-46. Plaintiff argues the report provides evidence the ALJ had found was lacking—a opinion from one of Plaintiff's treating sources that sets out her limitations. *See* Pl.'s Br. 13-14; Tr. 19 (ALJ's finding it "noteworthy that [Plaintiff's] treating physician and treating therapist have not offered opinions regarding [Plaintiff's] limitations."). Plaintiff argues that, based on *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), the matter should be remanded for further review of Dr. Bettman's opinion.

In *Meyer*, the Fourth Circuit addressed the difficulty that arises on review by the courts when, the Appeals Council makes additional evidence part of the record for purposes of substantial evidence review, but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. Under the facts presented in *Meyer*, the court determined that the new evidence added to the record by the Appeals Council was not "one-sided" and that, upon consideration of the record as a whole, the court could not determine whether substantial evidence supported the ALJ's denial of benefits. *Id.* at 707. In *Meyer*, the ALJ had determined that the record lacked evidence the ALJ deemed critical; the plaintiff subsequently obtained this evidence and presented it to the Appeals Council. *Id.* The Fourth Circuit concluded that "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in

the record." *Id.* Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the case had to be remanded to the ALJ for further fact finding. *Id.*

Plaintiff submits the opinion of Dr. Bettman similarly fills the gap the ALJ found existed in the case at bar—an opinion of a treating source regarding Plaintiff's limitations—making remand for further consideration by the fact finder appropriate. Dr. Bettman's opinion focuses on Plaintiff's physical RFC only. The Commissioner does not dispute that, based on the limitations Dr. Bettman found Plaintiff to have, she would be unable to perform any work. *See* Def.'s Mem. 18.

In finding Plaintiff not to be disabled and finding she had the RFC to perform sedentary work with several additional limitations, *see* Tr. 16, the ALJ sets out portions of Plaintiff's medical history and of her July 22, 2010 hearing testimony, Tr. 17-20. In his decision, the ALJ identified Brian Wright, M.D. as Plaintiff's treating internist. Tr. 15. In discussing Plaintiff's physical RFC, the ALJ refers to treatment notes of Dr. Wright from January, March, and June 2009. Tr. 17. These cited notes indicate that when Plaintiff saw Dr. Wright in January 2009, her "chest wall and lower spine pain was stable." Tr. 17 (referring to Ex. 7F/18, found at Tr. 540). In March 2009, Plaintiff returned to Dr. Wright with increased back pain, for which she received a trigger point injection. *See* Tr. 538. The ALJ notes Plaintiff's June 2009 visit to Dr. Wright indicate she was "positive for lower back pain." Tr. 636.[6]

The ALJ's decision includes no further discussion of Plaintiff's treatment by treating internist Dr. Wright. Rather, in discussing Plaintiff's RFC, the ALJ details the June 2009 consultative examination and report of nontreating source Dr. Williams, in which Dr. Williams

---

[6] The ALJ also references Dr. Wright's treatment notes when assessing Plaintiff's mental RFC. *See* Tr. 18. Because Plaintiff's appeal does not address mental impairments, the court does not focus on that portion of the ALJ's decision.

"noted some generalized weakness with [Plaintiff's] strength, and found [she could] only use her hands for very light manual dexterous purposes." Tr. 17-18. The ALJ's decision then includes boilerplate language indicating he "considered the medical opinions of [Plaintiff's] treating physicians, evaluating physicians, and the state agency medical consultants." Tr. 18-19. He finds it "noteworthy that [Plaintiff's] treating physician [apparently referring to Dr. Wright] and treating therapist have not offered opinions regarding [Plaintiff's] limitations." Tr. 19. The ALJ discounts a portion of Dr. Williams' consultative examination regarding Plaintiff's hand strength based on inconsistencies with Dr. Williams' observations regarding hand strength. *Id.*

The ALJ also noted the state agency physicians found Plaintiff not to be disabled, although they used a "different rationale." *Id.* Presumably, this reference means the nonexamining, nontreating physicians used a different rationale than examining, nontreating physician Dr. Williams in finding Plaintiff not to be disabled. The ALJ notes the opinions of these state agency physicians, Mary Lang and Angela Saito, M.D., do not deserve as much weight as those of treating and/or examining physicians, but he found them deserving of "some weight as they are supported by objective medical evidence of record." *Id.* Notably, though, the ALJ does not explain which objective record medical evidence supports the findings of the agency physicians.

Plaintiff submits remand for consideration of the additional report of Dr. Bettman is appropriate because it provides evidence the ALJ expressly found to be lacking: the opinion of Plaintiff's treating physician regarding her limitations. The records on which the ALJ purports to rely in determining Plaintiff's RFC are records through 2009 from Plaintiff's prior treating internist, Dr. Wright. Further, the opinions of the consulting physician, Dr. Williams, and the two nonexamining state agency physicians, were provided in 2009. At the July 2010 hearing,

Plaintiff testified that Dr. Wright had been her treating physician, but that she had begun seeing another treating physician at Healthcare Partners. Tr. 45.

In response, the Commissioner asserts *Meyer* is readily distinguishable in several regards. The Commissioner submits that, unlike the additional evidence before the Appeals Council in *Meyer*, the new opinion from Dr. Bettman "is conclusory and Dr. Bettman's relationship with Plaintiff is unclear[,]" and the record does not show that Dr. Bettman "ever treated (or examined) Plaintiff." Def.'s Br. 19. Further, the Commissioner submits Dr. Bettman's opinion is not supported by the record evidence. Specifically, the Commissioner notes Dr. Bettman's opinion references an MRI, but that the most recent spinal MRI in the record was normal. *Id.* at 19-20 (citing to various MRIs of record). Accordingly, the Commissioner asserts Dr. Bettman's opinion did not include a full review of the record, or the opinion is based on a changed condition that took place between the time of the ALJ's decision (August 27, 2010) and Dr. Bettman's opinion (September 21, 2011). *Id.* at 20. The Commissioner highlighted the lapse in time and noted Dr. Bettman did not indicate his September 21, 2011 opinion related back to the period on or before the ALJ's decision. *Id.*

In reply, Plaintiff argues, *inter alia*, that the Commissioner's argument in large part would improperly require the court to weigh competing evidence not yet considered by any fact-finder. Pl.'s Reply 3.[7]

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993) (stating

---

[7]     Plaintiff seeks to submit additional records that were not provided to the Appeals Council, seeking to use the records to detail the treatment relationship between Dr. Bettman and Plaintiff, thus countering the Commissioner's arguments and demonstrating remand is necessary for further review of Dr. Bettman's opinion. *Id.* at 3-5. Plaintiff attaches the additional records to a refiled version of her Reply, and, with the court's permission, makes a Motion to Consider Additional Evidence. ECF Nos. 28, 33.

sentence four and sentence six are the "exclusive" methods by which courts may remand social security appeals). These different types of remand, *Melkonyan v. Sullivan*, 501 U.S. 89, 97-98 (1991), are so named based on the sentence of 42 U.S.C. § 405(g) to which they refer because that statutory section contains no subparts. Under sentence four, courts may order remand to correct a substantive error in the Commissioner's final decision, for example, reversing and remanding a case where an ALJ's decision is not supported by substantial evidence. *Melkonyan*, 501 U.S. at 98 (quoting 42 U.S.C. § 405(g) (recognizing that, under sentence four, courts may enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for rehearing.")). A court's review under sentence four is limited to the certified administrative record. *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc) (quoting *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972) ("'Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence.'")). Pursuant to sentence four, the court may remand the matter for rehearing, and may instruct the Commissioner to further consider/develop the record upon rehearing.

In sentence six of 42 U.S.C. § 405(g), Congress provided a mechanism for a court's consideration of new information that is not part of the certified administrative record. *See* 42 U.S.C. § 405(g) (sentence six). Sentence six remand is appropriate when a plaintiff submits new evidence and further shows that: (1) the new evidence is material to her alleged disability; and (2) she had good cause for failing to submit the evidence earlier. *See* 42 U.S.C. § 405(g) (sentence six: a court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record"); *see also*

*Melkonyan*, 501 U.S. at 99, 100; *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). Here, Plaintiff's Motion to Consider Additional Evidence is governed by sentence six.

Based on the court's recommendation herein, it need not specifically consider those records that are the subject of Plaintiff's Motion to Consider Additional Evidence, ECF No. 33. The court notes, however, that Plaintiff seems to conflate the different types of remand and has not endeavored to explain how the additional evidence satisfies the sentence-six remand factor of "good cause." Plaintiff bears the burden of demonstrating good cause existed for failing to present the additional evidence while the matter was before the ALJ and/or the Appeals Council. In discussing the distinction between remands pursuant to sentences four and six of § 405(g), the *Melkonyan* Court noted that the legislative history of § 405(g) shows that "Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases." 501 U.S. at 100. Sentence six permits the court to "order additional evidence be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 45 U.S.C.§ 405(g) (excerpt of sentence six).

As the Commissioner properly noted, ECF No. 35 at 6 n.4, the sentence-four-remand standard is used to evaluate additional evidence that was submitted to the Appeals Council and made part of the record. *See Meyer*, 662 F.3d at 704; *Wilkins*, 953 F.3d at 96 n.3. The *Wilkins* court noted the requirements of "new" and "material" applied to all evidence for which a claimant seeks remand under 42 U.S.C. § 405(g), but noted "good cause" is not required when seeking to present new evidence to the Appeals Council. *Wilkins*, 953 F.3d at 96 n.3.

"Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705 (quoting *Wilkins*, 953 F.2d at 95-96). Pursuant to 20 C.F.R. § 404.970(b), when "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).

Dr. Bettman's opinion is not duplicative or cumulative, as it is the only opinion in the record that sets out specific limits on Plaintiff's ability to sit, stand, and perform other postural activities that finds Plaintiff is unable to perform any work. For that reason, the opinion is also material in that, if considered in connection with the other record evidence, there is a "reasonable possibility" that it might have changed the outcome of the ALJ's decision. *See Meyer*, 662 F.3d at 705. In finding Plaintiff was not disabled, the ALJ expressly found it "noteworthy" that Plaintiff's treating physician had not offered an opinion regarding her limitations. Tr. 19. The ALJ was then referring to Dr. Wright. The last medical record from Dr. Wright that was before the ALJ is from December 2009. *See* Tr. 633.

Whether Dr. Bettman's September 2011 opinion relates to the period on or before the ALJ's August 27, 2010 decision is a closer call. During the July 22, 2010 hearing, Plaintiff testified that in addition to her long history of treatment with Dr. Brian Wright, she had recently begun going to Healthcare Partners for care. Tr. 45. The mere fact that the opinion is dated after August 27, 2010 is not dispositive of whether it relates to the time period before August 27, 2010. *Cf. Bird v. Astrue*, 699 F.3d 337, 340 (4th Cir. 2012) (in slightly different context, Fourth Circuit found medical evaluations made after a claimant's insured status has expired "are not automatically barred from consideration and may be relevant to prove a disability arising before"

24

the insured status expired.). Further, to the extent it is unclear whether an opinion covers the time period prior to the ALJ's decision, the Commissioner can obtain clarification. *See Creekmore v. Astrue*, Civil Action No. 5:11-256-RMG, 2012 WL 2874013, *3 (D.S.C. July 13, 2012) (remanding under sentence four and noting evidence submitted to Appeals Council was new and material; finding Appeals Council could have requested clarification regarding time frame evidence covered). *Cf. Meyer*, 662 F.3d at 706 (noting importance of opinion from treating source, particularly when no other evidence from treating source in record).

Further the Commissioner's arguments, that Dr. Bettman's opinion is "not supported by substantial evidence," *see* Def.'s Br. 19-20, miss the point of remand. In focusing on the additional opinion itself, the Commissioner seems to ask the court to weigh Dr. Bettman's opinion and determine it "does not overcome the substantial evidence already supporting the ALJ's decision." Def.'s Br. 20. However, Dr. Bettman's opinion has not been considered by a fact-finder in conjunction with the portions of the record considered by the ALJ. Accordingly, the principles behind the court's role of performing substantial-evidence review require that the court do just that. For the court to weigh Dr. Bettman's opinion, which was never considered by the fact-finder, would run afoul of those principles. *Cf. Meyer*, 662 F.3d at 707 (finding remand appropriate when additional evidence was not merely additional "one-sided" evidence that had not yet been considered by the fact-finder).

Accordingly, the undersigned finds it appropriate to reverse and remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for rehearing and for further consideration of the record evidence, specifically including the opinion of Dr. Bettman provided to the Appeals Council. On remand, the fact-finder may determine it appropriate to obtain further information in considering Dr. Bettman's findings.

### 2. Plaintiff's Remaining Allegations of Error

The consideration of Dr. Bettman's opinion will impact consideration of Plaintiff's additional allegations of error. Further, the ALJ's reconsideration on remand may render some or all of Plaintiff's remaining issues moot. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir.2003) (remanding on other grounds and declining to address claimant's additional arguments). Because the court recommends the case be remanded to the Commissioner for the evaluation of the additional evidence submitted to the Appeals Council, the court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should consider Plaintiff's remaining allegations of error.

### III. Conclusion and Recommendation

Having considered the parties' arguments, the undersigned is constrained to recommend Plaintiff's Motion to Consider Additional Evidence, ECF No. 33, be *denied* and no sentence-six remand be ordered because Plaintiff has not established the requisite "good cause" for not having submitted the additional evidence to the ALJ or to the Appeals Council.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action as detailed within.

IT IS SO RECOMMENDED.

July 26, 2013                                       Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**